**The Rosen Law Firm**

**I N V E S T O R   C O U N S E L**

October 7, 2021

*Via CM/ECF*

The Honorable Philip M. Halpern
United States District Court- Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: *Kristal v. Mesoblast Ltd. et al.*, No. 7:20-cv-08430-PMH

Dear Judge Halpern:

We write on behalf of Plaintiffs[1] pursuant to Your Honor's Individual Practices in Civil Cases in response to Defendants' letter requesting a pre-motion conference (ECF No. 62).

Mesoblast misrepresented the likelihood it could successfully commercialize remestemcel-L for the treatment of aGVHD in children. Throughout the Class Period Defendants: (1) touted data from the clinical trial of remestemcel-L which formed the basis for the BLA; (2) represented that they would adequately address any substantial matters the FDA raised in the context of BLA approval; and (3) issued statements concerning remestemcel-L's timeline for approval and commercial ramp up. Unbeknownst to investors the FDA had informed Defendants that that the Trial was not an adequate and well-controlled study because it lacked an appropriate concurrent or historical control group and that the FDA disagreed with the Trial's statistical analysis, particularly, its null hypothesis, thereby undermining any conclusions that Mesoblast could draw about efficacy. From the very beginning, the FDA told Mesoblast that it should conduct a randomized clinical trial to support a BLA. When the FDA released its briefing document revealing these facts and then issued a CRL, the Company's stock price plunged 35% and shareholders were greatly damaged. The Complaint amply satisfies Fed. R. Civ. P. 9(b) and 12(b)(6) and the PSLRA's heightened pleading requirements.

---

[1] All capitalized terms herein have the meanings ascribed to them in the Amended Class Action Complaint (ECF No. 49).

1

**<u>The Amended Complaint Alleges Actionable Misstatements and Omissions</u>**

"A statement or omission is materially misleading when there is a substantial likelihood that the disclosure of the omitted or corrected fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available to the market." *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 331 (S.D.N.Y. 2014).[2]

Defendants mischaracterize the Complaint's allegations in analogizing it to cases alleging a duty to disclose interim FDA feedback. Here, the FDA informed Defendants prior to beginning the Trial that it was not properly designed and not an adequate and well-controlled study and recommended that Mesoblast conduct a new randomized controlled trial. "A company seeking FDA approval of a new drug clearly is not under any obligation to disclose every single issue raised by the FDA throughout the process. However, if the FDA expresses significant concerns regarding the sufficiency of the trials, the company cannot make affirmative representations regarding the completeness or sufficiency of the trials without full disclosure." *In re Amylin Pharms., Inc. Sec. Litig.,* 2003 WL 21500525, at *8 (S.D. Cal. May 1, 2003). Defendants attempt to recast the statements in the FDA briefing materials. For example, Defendants assert that the FDA did not tell Mesoblast that the null hypothesis was unacceptable, only that it was unacceptable in the "absence of data from appropriate historical controls." But Defendants ignore that the FDA *also* stated that the Study lacked appropriate historical controls. (Complaint ¶169, quoting FDA Briefing Document at 10-11 "given the absence of appropriate concurrent or historical controls, [the trial] does not appear to be an adequate and well-controlled study."). Defendants also misstate the court's holding in *In re Sanofi Sec. Litig.,* 87 F. Supp. 3d 510, 541-42 (S.D.N.Y. 2015). The *Sanofi* court did not hold FDA feedback never has to be disclosed unless it is "tantamount to a statement that the drug could not or would not be approved." Instead, the *Sanofi* court stated that the FDA's commentary in that case "cannot be fairly depicted-*as plaintiffs characterize it*- as tantamount to a statement that Lemtrada could not or would not obtain timely FDA approval." 87 F. Supp. 3d 510, 541. This case is on all fours with *Sanofi*. Unlike in *Sanofi*, where "much of the information conveyed to Sanofi by the FDA was publicly available"

---

[2] All citations and internal quotations are omitted unless otherwise noted.

Defendants never disclosed to investors that the FDA disagreed with the Study's null hypothesis and never disclosed to investors that the FDA told Mesoblast at the outset that it should conduct a new randomized controlled trial.

The Complaint adequately alleges that Defendants' statements touting the Trial results and that it met the "pre-specified primary endpoint" were false and misleading because the endpoint was based on a Trial design and null hypothesis that FDA had told Mesoblast was unacceptable. (¶¶147-173, 195, 206-208, 212, 216, 218, 221, 226, 228, 235). Accordingly, this case is unlike *Abely v. Aeterna Zentaris,* 2013 WL 2399869 (S.D.N.Y. May 29, 2013) where the complaint did not allege how defendants' trial design materially contravened FDA guidance.[3] Additionally, Defendants repeatedly assured investors that the rolling BLA process would provide an opportunity for "ongoing communication" with the FDA and that the Company "expects to be able to adequately address any substantial matters raised by the FDA." (¶¶142, 199-200, 203, 209, 213). These statements are not forward looking or accompanied by meaningful cautionary language because they describe as hypothetical events that had already transpired: the FDA had already informed Defendants of "substantial matters" concerning the Trial which Defendants did not address. Instead, Defendants ignored the FDA's advice. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013) (Risk disclosures misleading where company warns of a risk that has already materialized.) Further, the Complaint alleges Defendants' statements concerning the timeline for FDA approval of remestemcel-l and commercial ramp up were made without a reasonable basis. (¶¶212, 219, 221, 226, 228, 230). Accordingly, these statements are not "non-actionable opinion" or "puffery."

Additionally, the fact that 9 members of the ODAC panel voted in favor of approval is irrelevant because "[s]ecurities laws approach matters from an *ex ante* perspective." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 n. 16 (3d Cir. 1997) In assessing allegedly misleading statements in the context of FDA approval courts assess whether defendants can support their representations "at the time they were made." *Schuenman v. Arena Pharmaceuticals, Inc.*, 840

---

[3] Notably, the fact that the FDA accepted the BLA for review is not significant. It only means that Mesoblast filled out the BLA correctly. *Shanawaz v. Intellipharmaceutics Int'l Inc.,* 348 F. Supp. 3d 313, 324–25 (S.D.N.Y. 2018). (rejecting assertion that acceptance of NDA was indicative of sufficiency because "regulations governing the FDA's initial acceptance of NDAs being largely concerned with administrative sufficiency").

F.3d 703, 708 (9th Cir. 2016) (noting, and finding irrelevant to falsity allegations, that the FDA ultimately approved drug at issue).

Finally, Defendants' contention that the allegations attributable to Dr. Dixon cannot be credited is incorrect. By pleading consultation with their expert Plaintiffs are just informing the court of the basis for their allegations. *See, e.g. DeMarco v. DepoTech Corp.*, 149 F.Supp.2d 1212, 1222 (S.D. Cal. 2001) (considering portions of complaint derived from expert affidavit).

**The Amended Complaint Pleads Scienter**

The pleading standard for scienter is satisfied "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior." *In re Lehman Bros. Equity/Debt Securities Litig.*, 799 F. Supp. 2d 258, 293 (S.D.N.Y 2011). An inference of scienter is strong "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Accordingly, the inference of scienter need not be more likely than any plausible opposing inference; the tie goes to the plaintiff. *Id.* The proper inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23, 326 (emphasis in original). Recklessness can suffice to meet pleading requirements for scienter where defendants have "knowledge of facts or access to information contradicting their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). Even though only one is necessary, Plaintiffs properly allege both that Defendants had motive and opportunity to commit the fraud and that there was strong circumstantial evidence of conscious misbehavior or recklessness.

*__Motive and Opportunity.__* Throughout the Class Period Mesoblast admitted in its SEC filings that it had substantial concerns about its ability to continue operations because of lack of cash and raised $140.1 million from investors after issuing false and misleading statements concerning the BLA for remstemcel-L. (¶¶36-38, 215-217, 231-33, 244-45). *See Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020) (inference of scienter "bolstered by the

4

fact that Defendants admitted in their SEC filings that they needed to raise funds for Acer to remain viable").[4]

***Conscious Misbehavior or Recklessness.*** Defendants' assertion that it would have been implausible to continue to invest time and resources into approval of remestemcel-L is misguided. The opposite is true. In the face of the FDA's directive to conduct a proper trial that would include a control group and an appropriate null hypothesis, Defendants refused because they did not want to incur the additional time and expense. Plaintiffs contend that Defendants misled investors by making positive statements about the BLA and Trial results that led shareholders to believe that there was a 90% probability that the FDA would approve remestemcel-L despite Defendants' awareness that the FDA had told Mesoblast that the Trial was not adequate and well-controlled, and that the FDA disagreed with trial's null hypothesis. (¶¶224-26).[5]

Further, the Complaint adequately alleges scienter as to the Individual Defendants. For example, the Complaint alleges that Defendant Itsecu, Mesoblasts' founder and CEO, issued many of the misleading statements and attended or was provided with the minutes of the meetings between Mesoblast and the FDA. (¶¶151, 248). Accordingly, Plaintiffs have alleged scienter as to Mesoblast.[6]

***Loss Causation and Section 20(a).*** When the FDA's briefing document revealed that the FDA had informed Mesoblast of the fundamental problems with the trial design and disagreement with the null hypothesis and then when Mesoblast announced that the FDA issued a CRL Mesoblast's stock price declined precipitously. (¶¶236-243). Therefore, the Complaint adequately alleges loss causation. Because the Complaint adequately alleges a primary violation, it also sufficiently alleges Section 20(a) claims.

---

[4] In *Zagami v. Cellceutix*, 2016 WL 3199531 (S.D.N.Y. June 8, 2016) plaintiffs did not allege that the company issued a going concern warning.

[5] This case is similar to *Skiadas v Acer Therapeutics*, 2020 WL 3268495, at *11-12 (S.D.N.Y. June 16, 2020) in which the court held that "[Plaintiff's] allegations support the inference that Defendants rationally (though recklessly) gambled that the FDA would ultimately approve EDSIVO, even though the FDA had never 'agreed' that it would approve EDSIVO without additional clinical development…[t]he fact that a gamble—concealing bad news in the hope that it will be overtaken by good news—fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble."

[6] *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). "[T]he most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant."

5

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

*/s/Sara Fuks*

Sara Fuks

*Counsel for Plaintiffs*


cc:    All Counsel of Record (via ECF)

6