UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
IRENE KRISTAL, et al.,

                          Plaintiffs,

                                    20-CV-08340 (PMH)
     -vs-
                          TELECONFERENCE


MESOBLAST LIMITED, et al.,

                          Defendants.
----------------------------------------x


     *Proceedings recorded via digital recording device*


                          United States Courthouse
                          White Plains, New York

                          Tuesday, December 21, 2021


B e f o r e:

                          HONORABLE PHILIP M. HALPERN
                          Magistrate Judge


A P P E A R A N C E S:

THE ROSEN LAW FIRM, P.A.
     Attorneys for Plaintiffs
BY:  SARA E. FUKS, ESQ.,


WILSON, SONSINI, GOODRICH & ROSATI
     Attorneys for Defendant
BY:  IGNACIO E. SALCEDA, ESQ.,

Conf.                    Kristal v. Mesoblast Ltd.                    2

THE DEPUTY CLERK:  In the matter of Irene Kristal, et al, against Mesoblast Limited, et al., docket number 20-CV-8430.

Would Counsel for Plaintiff please note your appearance.

MS. FUKS:  Good afternoon.  This is Sara Fuks for Plaintiff.

THE DEPUTY CLERK:  And would Counsel for Defendants please note your appearances.

MR. SALCEDA:  Good afternoon, your Honor.  This is Ignacio Salceda on behalf of the Defendants, and with me are a couple of my colleagues and one of my clients.

THE COURT:  All right, good afternoon, Counsel.  Okay.

So I'm always...always fascinated by this scenario, the 10(b)(5)/20(a) scenario, and the, I guess...three hundred -- 282-paragraph complaint, so let's just talk for a minute.

I guess -- who's going to speak for the Defendants?  Mr. Salceda, what are we accomplishing here by going down this motion-to-dismiss path?  Do you believe that, in fact, there isn't a scintilla of a claim here?

MR. SALCEDA:  Your Honor, we believe that the complaint does not satisfy the requirements of the Securities Litigation Reform Act of 1995...

THE COURT:  Mm-hmm.

MR. SALCEDA:  And as shown by repeated decisions in this District and by the Second Circuit, we don't believe it

TABITHA R. DENTE, RPR, RMR, CRR
(914) 390-4027

Conf.                          Kristal v. Mesoblast Ltd.                          3

satisfies the requirements for an actionable false statement or for fraudulent scienter or for another element of Rule 10(b)(5) which is loss causation, and we cite in our letter, for example, the *Sanofi* case, which is on point, out of this District and affirmed by the Second Circuit, which deals with the question before the Court of guidance by the FDA or engagement by the FDA in connection with this process.

As your Honor notes, this is a lengthy complaint, but the allegations are straightforward.  The case involves a company that is developing a treatment for Graft vs. Host disease in children.  The company engaged with the FDA over the course of a couple of years.  It submitted its application.  The FDA referred it to an advisory committee which voted overwhelmingly, 9 to 1, in favor of recommending to the FDA that the FDA approve the drug, and the FDA decided not to approve the drug.  The process remains ongoing, but we do believe that the complaint fails to state a claim, and, in fact, our view is strengthened by two recent summary affirmances by the Second Circuit.  These are in the last couple of weeks so they're not mentioned in the parties' papers to the Court on the pre-motion, but the Second Circuit two weeks ago affirmed the dismissal of a securities class action in a case called *Alkermes* which deals with, again, feedback, interim feedback, by the FDA, and the Court there dismissed the underlying complaint and the complaint was -- and the dismissal was affirmed.

Last Thursday, the Second Circuit again affirmed a case, this one out of the Eastern District, involving a company called Ohr Pharmaceuticals, where the issue is the conclusions that the company and its executives had drawn based on prior clinical trials.  That is another issue that the Plaintiffs raise in their not-quite-pithy complaint, so we believe that our motion is not only well taken, but strong and consistent with the way the Second Circuit and courts in this District have interpreted the Reform Act.

THE COURT:  And so if I'm capturing the essence, it's -- the Plaintiff claims the false statements to be in connection with the FDA process?  Is that the essence of it?

MR. SALCEDA:  That is the essence of it.  It has several strands, but that is the essence of it as the company was engaged in the process of obtaining approval for its stem cell drug.

THE COURT:  And just as a matter of curiosity, is this a process that's going or has concluded?

MR. SALCEDA:  Oh, no, it's ongoing, your Honor.  The FDA issued -- the process is ongoing to this day.  The company is still pursuing approval of this treatment and is still engaged in the process.  It's not, it's not a done deal by any means, and we hope that eventually the FDA will agree with the previous advisory committee, and I don't know if it'll have another advisory committee, but that this treatment for a horrid

Conf.                    Kristal v. Mesoblast Ltd.                    5

disease can actually be provided to sick children.

THE COURT:  And did I hear you had a lost causations argument.

MR. SALCEDA:  Yes, your Honor.  We mentioned it briefly in our letter.  There's a lost causation issue, and it's not the first argument, that would be the third argument we would make, but I think there is a lost causation issue, particularly for the last part of the class period.

So here, the sequence of events is the company made various announcements as to how it was submitting -- it had been given approval by the FDA to submit its application and then it stated at various points that it had provided the FDA the information.  Ultimately the FDA convened an advisory committee of independent experts that the FDA chose, and there was an initial stock drop in August of 2020 when the briefing materials for that committee were made public by the FDA, that is a standard part of the process, but the committee, as I said, overwhelmingly approved the recommended approval.

So all the information was out there as of the middle of August when, you know, Plaintiffs say, okay, here's what the FDA's view was of the merits or demerits of the drug in the clinical trials, and here's also the view of the advisory committee which recommended in favor.  The advisory committee meeting is a publicly-available -- is a public event and, in fact, the Plaintiffs quote from it at length in their complaint.

TABITHA R. DENTE, RPR, RMR, CRR
(914) 390-4027

Conf.                        Kristal v. Mesoblast Ltd.                        6

So certainly by the time that comes out, and that's in mid-August, all the information is out there and the market can determine what it thinks, but ultimately the FDA in early October issued the letter saying that it was not prepared to approve the drug, but certainly we think that there is a lost causation issue that permeates the complaint, but is particularly significant in that last two-and-a-half-month period.

THE COURT:  I see.

All right, Ms. Fuks, do you want to jump in for a moment?

MS. FUKS:  Yes, sure.  Good afternoon, your Honor.

So, you know, we -- just a point on these, these two cases from the Second Circuit, which I have not yet read, but this case is completely distinguishable from other cases that say that there is no duty to disclose the FDA's interim feedback because what we have here is way beyond interim feedback.  We have a fundamental problem with the trial's design that was communicated to Defendants before they began the trial in 2015, and Defendants don't dispute this.

And it is clear from the FDA briefing document the fundamental problems that the FDA communicated to Defense and they went forward with the BLA submission anyway, and there's absolutely nothing wrong with them doing that, it was a reckless gamble, okay, but what the company cannot then do is make

positive statements to investors about the FDA process and the prospects for BLA approval and the results of the clinical trial and not disclose these fundamental concerns, and the case that we cite in our pre-motion submission, the *Amylin* case, and it is not from this District, but it is directly on point, you know, supports this.

And, I mean, what you have here is a company with no saleable products and -- so it has this stem cell product with a twenty-year history of failed clinical trials, and as one of the members of the ODAC panel said 'if you test something often enough, maybe you can show it works,' but this could just be the results of chance, as it is not the substantial evidence of efficacy that you need to support FDA approval, and so this is exactly what Mesoblast has done and continues to do in trying to commercialize this product.

And so the FDA briefing document clearly states what it told Mesoblast in a series of six meetings since 2009, and the FDA characterizes these items as key points, okay, that the FDA, quote, emphasized.  And I'm not going to go through all of these, but some of the fundamental points the FDA emphasized are that it told Mesoblast to conduct a new randomized trial -- this is not a randomized trial, this is not an adequately-controlled trial -- and it told Mesoblast the trial needed appropriate historical controls and that the controls that it was using were inappropriate, and it says "the null hypothesis is not based on

data from a historical control population.  In the absence of data from appropriate historical controls, the FDA's unable to agree that the proposed null hypothesis is acceptable."  And as the complaint explains, which is why the complaint is somewhat lengthy, because this is fairly technical, is the null hypothesis is no good, all the conclusions you draw about efficacy and statistical significance, you know, they're worthless pretty much.

And what Defendants --

THE COURT:  Let me ask you a question, let me interrupt for one second.

This information that's being disclosed by the FDA, is it being disclosed way after the fact or is it being disclosed at or about the time that it's notifying the Defendant?

MS. FUKS:  Way after the fact.  It's not disclosed until the first corrective disclosure in the complaint when the FDA briefing document comes out and the stock drops 35 percent, damaging investors.

Now, Defendant --

THE COURT:  How much of a time spread between when the Defendant knew and the public learned?  Is it days, weeks, months, what?

MS. FUKS:  Years.

THE COURT:  Years.

MS. FUKS:  So since -- yeah, so the beginning of the

class period when Defendants begin issuing these misleading statements is December 2018 and the end of the class period is October 2020.  August 2020 is when the briefing document comes out.

And the only thing the Defendants stated is that there's always a risk that the FDA may not -- they did tell investors, look, it's a single-arm trial, that's the one thing they disclose, but none of these other things about the design and the null hypothesis was ever disclosed, all they said was that there's a risk that the FDA may not approve of -- may not approve this treatment.  And, of course, it's no different than any other company submitting a BLA, you know, there's always a risk of non-approval, but, I mean, this case is distinguishable from some of these other cases because these problems are fundamental.

And, you know, what Defendants do is they advocate for a different interpretation of what the FDA briefing document says, and the Second Circuit just recently said, you know, you can't do it.  Even if there's ambiguity, which we don't believe it's ambiguous, we believe that it's clear on the face of the FDA briefing document, you know, what it said, but even if there's ambiguity, you cannot dismiss.  And that is -- you know, the Second Circuit clarified this in the *Textron Securities* case, and the case cite is 14 F.4th 141, and, you know, the pleading standard here is critical.  And in the *Textron* case,

Conf.                     Kristal v. Mesoblast Ltd.                    10

the Second Circuit reversed dismissal, and, you know, the District Court granted Defendant's motion to dismiss because it accepted Defendant's competing interpretation of certain statements in the complaint, and the Second Circuit said you can't do this on a motion to dismiss.

        And I think that, you know, the language here is instructive.  It said that "we emphasize that the District Judge's alternative interpretation of the challenged statements was not unreasonable.  The case with respect to Donnelly's inventory-related statements is a close one, and we understand why the dissent supports the District Judge's view. Nevertheless, we conclude that the District Court, in effect, required [Plaintiff] 'to show that [its] reading was superior to the court's own benign reading of the statement -- a requirement we have described as error.'"

        (Brief pause)

        THE COURT:  Are you there, Counsel?

        MS. FUKS:  Yes.

        So, you know, Defendant's arguments in this respect about, you know, ambiguity in the briefing document, they can't be accepted at the motion-to-dismiss phase.

        And, I mean, Defendants also, you know, make a scienter argument, which has been rejected.  You know, I think the Acer case is a great example.  They said, you know what, why would we do this, why would we go forward with this BLA, it's

costing us money, and, you know, companies do this all the time.

I mean, if you look at Mesoblast's history and where Mesoblast is at, it's easy to understand why it would make such a gamble.  You know, it has no saleable products, it has no revenue, it needs funding from investors, and it's selling investors hope, you know, and it raised $141 million during the class period based on these false statements and that was enough to fund its operating for two years.  Absent this false hope, it would not have been able to raised this money.

THE COURT:  All right.  Let me urge the following.

I'm a burden-of-proof person.  I don't need a lot of long-winded, detailed...discussion outside of the four corners of the burden of proof.  You got a 10(b)(5) case, it has elements, address each of the elements for me as to why the case should be dismissed.  And likewise follow the same, the same recipe if you don't mind, Ms. Fuks.  I'm interested in only identifying yes or no as a matter of fact based on the complaint that there is or is not a plausible claim, period, full stop.

Have you gone back and forth on your amended pleading yet?  Is this an amended pleading?  I assume it is.

MR. SALCEDA:  Your Honor --

MS. FUKS:  Yes, it is, your Honor.

MR. SALCEDA:  Yes, your Honor.

THE COURT:  Don't write me and tell me, "oh, by the way, Judge, I'd like to amend again" because of something you

read in the brief.  I don't want to -- that won't do well with me.

So this is the pleading we're working off of, so let's just get a rock-solid burden of proof, stay with your page limits.  I don't need any more than I need to decide the case and I certainly don't need any less, but I certainly am not looking to do anything except adjudicate this complaint, thumbs up or thumbs down, on plausibility, okay?

Now, I'm going to ask you to bundle the motion.

Mr. Salceda, how much time do you need to serve your motion?

MR. SALCEDA:  Yes, your Honor, we're happy to bundle it and serve it to the Court on the -- you know, once all of the briefing is done.  We have met and conferred with Ms. Fuks and have a proposed schedule for the Court's --

THE COURT:  Terrific --

MR. SALCEDA:  -- consideration.

THE COURT:  -- what have you got.

MR. SALCEDA:  So this is on behalf of both, but Ms. Fuks's can opine.  Motion served February 9, opposition served April 11, reply and bundling May 26.

THE COURT:  Wow.  Are you sure you don't want to get into June or July on the schedule?  That's a long time for a motion to dismiss.

I'm very easy on these things, I know lawyers are

busy, I spent a long time on the other side of this call and so I won't say no, but I will say this, don't call me, I'll call you for adjournments.

MR. SALCEDA:  We understand, your Honor, and we will not ask for a single...I was going to say dot beyond the page limits.

THE COURT:  Are you progressing with discovery?

MR. SALCEDA:  There is a mandatory stay of discovery pursuant to --

THE COURT:  Oh, right.

MR. SALCEDA:  -- the Reform Act.

THE COURT:  Yeah, you're right, you're right.

Have you discussed settlement?  I don't think that's mandatorily stayed.

MR. SALCEDA:  Well, your Honor, we're open to it, and recently there was some...proposal, but I won't get into the specifics because --

THE COURT:  Yeah, the reason I'm asking is if I can help by asking a magistrate judge to get involved or -- the mediation program, I think, is probably not well suited for a problem like this, but I would encourage that with the number of lawyers at least having appeared, that at some number there should be a way to resolve this, and I'd rather you do it sooner than later because the further we go, the more hardened the positions become and the more difficult, of course, it is to

resolve, so you all sound experienced to me, I assume this is not your first rodeo, and, therefore, I will leave it at that.

If you think a magistrate judge can assist you or I can assist you in any way in terms of getting you to a magistrate judge, just raise your hand, send me a note, and I will react -- send it on behalf of both sides, I will react accordingly.

I'm going to let the very generous briefing schedule that you selected remain.  Please bundle the motion, meaning file everything on the apply date, and...I think that's it.  If you would just really just stay real focused for me on the burden of proof and educate me on what it is with respect to each and every element you want me to understand, I will get to this as quickly as I can.

MR. SALCEDA:  Thank you.

THE COURT:  All right?  Can we do anything else for each other this afternoon?

MR. SALCEDA:  Not from Defendants, your Honor.

MS. FUKS:  From Plaintiffs either, your Honor.

THE COURT:  All right, enjoy your holidays.  Take care of yourselves.

MR. SALCEDA:  Thank you.

MS. FUKS:  You as well, thank you.

Certified to be a true and accurate transcript.

Conf.                        Kristal v. Mesoblast Ltd.                        15

_____

TABITHA DENTE, SR. COURT REPORTER