UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRENE KRISTAL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br><br>MESOBLAST LIMITED, SILVIU ITESCU, JOSH MUNTNER, and FRED GROSSMAN<br><br>Defendants. | **CASE No.: 7:20-CV-08430-PMH**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING
<u>SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES</u>**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ......................................................................................... 1

II.  NATURE OF THE ACTION.......................................................................................... 3

    A.  Factual Background.......................................................................................... 3

    B.  Procedural History.......................................................................................... 4

    C.  The Proposed Settlement ................................................................................ 5

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E).................... 5

    A.  Preliminary Approval Should be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, And Adequate" and the Court Will "Likely" be Able to Grant Final Approval ..................................................................................................................... 5

    B.  A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair ..................................................................................................... 7

    C.  Public Policy Favors Settlement of Securities Class Actions ........................................ 8

IV.  ARGUMENT.................................................................................................................... 8

    A.  The Settlement is Fair, Reasonable, and Adequate in Light of  the Factors Outlined by Rule 23(e)(2) and the Remaining Grinnell Factors ............................................................ 8

        1.  Plaintiffs and Lead Counsel Adequately Represented the Class............................ 9

        2.  The Settlement is the Result of Good Faith, Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel ............................................... 10

        3.  The Settlement is an Excellent Result for the Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation…………………………………………11

            a)  Risks of Proving Liability and Damages…………………………………………12

        4.  Other Factors Established by Rule 23(e)(2)(C)……………………………………14

        5.  The Settlement Treats All Members of the Class Equitably……………………...16

        6.  The Remaining Grinnell Factors are Neutral or Weigh in Favor of Preliminary Approval………………………………………………………………………………..17

V.  CERTIFICATION FOR PURPOSES OF SETTLEMENT IS APPROPRIATE....... 18

    A.  The Settlement Class Satisfies the Requirements of Rule 23(a) ................................. 19

        1.  Numerosity..................................................................................................... 19

        2.  Commonality ................................................................................................. 20

        3.  Typicality ...................................................................................................... 20

        4.  Adequacy ...................................................................................................... 21

**B.    Common Questions Predominate and a Class Action is the Superior Method of Adjudication** ...................................................................................................................... **22**

**VI.   THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE ..... 23**

**VII. PROPOSED SCHEDULE OF SETTLEMENT EVENTS............................................. 25**

**VIII.  CONCLUSION .......................................................................................................... 25**

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................................... *passim*

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .............................................................................................. 13

*Athale v. Sinotech Energy Ltd.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)....................................................................... 23

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .......................................................................................... 20

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010).................................................................................................. 23

*Cagan v. Anchor Sav. Bank FSB*,
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .............................................. 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)........................................................................................... 19, 20

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................................... 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).................................................................................................. 11

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009) ............................................................................................ 8

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004).................................................................................... 24

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).................................................................................................... 19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).................................................................................................... 10

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).................................................................................................. 18

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................................................................. 13

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ............................................................. 12

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................... 15

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......................................................... 16

*In re "Agent Orange" Prod.* Liab. Litig.,
  597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................ 11, 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 18, 25

*In re Altair Nanotechnologies Sec. Litig.*,
  No. 14 CIV. 7828 (AT), 2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016)................................... 15

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................... 17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ........................................................................... 5

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................. 17

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................... 25

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................ 13

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 5

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................... 16

*In re Deutsche Bank AG Sec. Litig.*,
  2020 WL 3162980 (S.D.N.Y. June 11, 2020) ............................................................ 15

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)................................................................................ 21

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ....................................................................... 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 18

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................. 8, 15, 18

*In re Indep. Energy Holdings PLC*,
    No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................ 10, 18

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................... 8, 20, 22

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................... 18, 20, 22

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................... 17

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................ 17

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) ............................................................. 25

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ......................................................................... 6

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................... 6, 7

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................ 20

*In re Platinum & Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ......................................................... 7, 8

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................... 19, 21

*In re Sanofi-Aventis Sec. Litig.*,
   293 F.R.D. 449 (S.D.N.Y. 2013) ............................................................................... 23

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   2005 WL 1635158 (S.D.N.Y. July 8, 2005) ............................................................... 6

*In re Take Two Interactive Sec. Litig.*,
   2010 WL 11613684 (S.D.N.Y. June 29, 2010) ......................................................... 16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................... 17

*Leung v. Home Boy Rest. Inc.*,
   2009 WL 398861 (S.D.N.Y. Feb. 18, 2009).............................................................. 10

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................... 15

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)...................................................................... 11

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*,
   2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016)............................................................. 19

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..................................................................................... 18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................................... 13

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..................................................................................... 19

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................... 21, 24

*Thomas v. MagnaChip Semiconductor Corp.*,
   2017 WL 4750628 (N.D. Cal. Oct. 20, 2017).......................................................... 16

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014).................................................................................. 24

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................... 8, 10

vi

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)........................................................................................... 18

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)........................................................... 23

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................... 21

## Statutes

15 U.S.C. § 78u-4(a)(7) ................................................................................................... 24

## Rules

Fed. R. Civ. P. 23.................................................................................................... *passim*

## Other Authorities

*Newberg on Class Actions* § 11:25 (4th ed. 2002) ........................................................... 6

Lead Plaintiff Frank Fayz ("Fayz") and named plaintiff David Caudle (collectively, "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement (the "Settlement") of the above-captioned action (the "Action") embodied in the Stipulation and Agreement of Settlement dated March 28, 2022 (the "Stipulation")[1] and filed concurrently herewith. Plaintiffs ask the Court to enter an order preliminarily approving the proposed class action settlement (the "Preliminary Approval Order"). The Preliminary Approval Order will: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class[2] and appoint Plaintiffs as class representatives and Lead Counsel as class counsel for settlement purposes; (iii) approve the form and manner of Notice of the Settlement to the Settlement Class; and (iv) schedule a final approval hearing ("Final Approval Hearing" or "Settlement Hearing") at which the Court will, among other things, consider final approval of the Settlement.

## I. PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants in exchange for a cash payment of $2,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately between 2.7-3.7% of the potential maximum recoverable damages, which is well-within the range of reasonableness given the risks of continued litigation.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Indeed, prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation.

[2] The "Settlement Class" or "Class" is defined as all persons and entities who purchased or otherwise acquired Mesoblast publicly traded American Depository Shares ("ADS") between December 13, 2018 and October 2, 2020, inclusive (the "Class Period") and who held such shares on August 11, 2020, and/or October 2, 2020, and who were damaged thereby (the "Class"). Excluded from the Settlement Class are: 1) Defendants; 2) the officers and directors of Mesoblast; 3) members of Defendants' immediate families and their legal representatives, heirs, successors, and assigns; and 4) any entity in which Defendants have or had a controlling interest.

allegedly wrongful acts, which included, among other things, (a) a review and analysis of Mesoblast's filings with the SEC, Defendants' public statements, news articles concerning Mesoblast, analyst reports, and transcripts of Mesoblast's investor calls, (b) a review and analysis of FDA briefing materials and other FDA documents concerning Mesoblast's Biologics License Application ("BLA") for remestemcel-L; and (c) consultation with damages and FDA experts; (ii) drafted the Amended Class Action Complaint based on the investigation; (iii) reviewed and analyzed Defendants' pre-motion to dismiss letter served on Plaintiffs, and drafted and served a response thereto; (iv) reviewed and analyzed Defendants' pre-motion to dismiss letter filed with the Court, and drafted and filed a response thereto; (v) participated in the pre-motion to dismiss conference before the Court; (vi) prepared a detailed mediation submission and reviewed Defendants' mediation submission; and (vii) attended a full-day mediation session before a mediator who is a retired federal judge. The Settlement is, therefore, the result of arm's-length negotiations, conducted by informed and experienced counsel.

To approve the Settlement, the Court must ultimately determine that it is fair, reasonable, and adequate. The Settlement meets these requirements. At this point, however, the question is not *whether* to approve the Settlement, but whether the Settlement *might* be approved, a standard the Settlement plainly satisfies. While Plaintiffs believe their claims are meritorious, significant issues exist with respect to liability and damages. Given these issues, the $2,000,000 recovery is an excellent resolution of this litigation, and it is in the best interests of the Settlement Class.

Because all of the requirements for class certification approval are met, the Court should certify the Class for settlement purposes only. Further, because the proposed Plan of Allocation (the "Plan") is fair, reasonable, and adequate, the Court should preliminarily approve it. Finally, the Court should approve the form and content of the Notice, and should schedule a final approval

hearing to determine whether the proposed Settlement, the Plan, and Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.     NATURE OF THE ACTION

### A.     Factual Background

This is a securities class action brought by investors alleging, *inter alia*, that Mesoblast, Silviu Itescu, Josh Muntner, and Fred Grossman (collectively, the "Defendants") violated Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by making false and misleading statements and material omissions concerning Mesoblast's BLA and pivotal clinical trial for remestemcel-L (the "Trial") to treat pediatric patients with acute graft-versus-host disease ("aGVHD"). Specifically, the Complaint alleges that Defendants misled investors into believing that the Trial would support FDA approval of the Company's BLA for remestemcel-L when in fact Defendants were aware that flaws in the Trial's design substantially diminished the likelihood of FDA approval. As a result of Defendants' false and misleading statements and material omissions, Plaintiffs allege that the prices of Mesoblast's publicly-traded ADS were artificially inflated and declined when the truth was revealed.

Defendants have denied any fault or liability or wrongdoing, including regarding Mesoblast's statement concerning the Trial, the BLA, or interactions with the FDA.  Defendants further deny that Plaintiffs or any other member of the Settlement Class has a claim or suffered any compensable damages.[3]

---

[3] Defendants have stated that they do not oppose this Motion, although they do not adopt or agree with any of the allegations, factual contentions, or legal arguments advanced herein.

3

### B.    Procedural History

On October 8, 2020, a class action complaint was filed in this Court styled *Kristal v. Mesoblast Limited, et al.*, 7:20-cv-08430-PMH. Another action, *Mauskopf v. Mesoblast Limited, et al.*, 1:20-cv-09111-PMH, was filed in this Court on October 30, 2020, and was subsequently consolidated into the *Kristal* action by the Court's December 23, 2020 Order. On December 7, 2020, Fayz filed a motion for appointment of lead plaintiff and approval of Lead Counsel. On December 23, 2020, the Court appointed Fayz as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. On August 13, 2021, Plaintiffs filed the Complaint. Pursuant to the Court's Individual Rules, Defendants sent Plaintiffs a pre-motion to dismiss letter on September 7, 2021 and Plaintiffs sent Defendants a response thereto on September 14, 2021. On October 1, 2021, Defendants filed their pre-motion letter to dismiss with the Court, and Plaintiffs filed their response thereto on October 7, 2021. On December 21, 2021, the Court held a telephonic pre-motion to dismiss conference that the Parties' counsel attended. The same day, the Court granted Defendants leave to file a motion to dismiss and set a briefing schedule for Defendants' anticipated motion.

With the litigation ongoing, the Parties began settlement negotiations shortly after the Court's pre-motion to dismiss conference and agreed to schedule a mediation with a private mediator. On February 2, 2022, the Parties attended a mediation with retired federal judge Hon. Gary Feess of Phillips ADR. Prior to the mediation, the Parties exchanged detailed mediation statements with numerous exhibits that were also submitted to Judge Feess. After a full-day mediation and extensive, hard-fought negotiations with the assistance of Judge Feess, the Parties reached an agreement-in-principle to settle the Action and executed a term sheet (the "Term Sheet") setting forth the principal terms of the settlement. On February 9, 2022, the Parties jointly filed a letter motion requesting that the Court stay all deadlines in the Action given the Parties reaching a settlement agreement in principle, to allow the Parties to negotiate and finalize the

4

settlement papers. On February 10, 2022, the Court adjourned all deadlines in the case and ordered the Parties to file preliminary approval and notice documents with the Court by March 28, 2022.

### C.     The Proposed Settlement

The proposed Settlement consists of $2,000,000 in cash to be paid by or on behalf of the Defendants. The Settlement Amount will be deposited into an interest-bearing escrow account within thirty calendar days following the Court's entry of the Preliminary Approval Order (with any interest or other income earned thereon, the "Settlement Fund"). The Settlement Fund shall be used to pay any Administrative Costs, Taxes and Tax Expenses, and attorney's fees and Litigation Expenses as approved by the Court, with the balance of the Settlement Fund to be distributed to Authorized Claimants.  In return, the Settlement provides that Plaintiffs and the Settlement Class will release all Released Plaintiffs' Claims against Defendants and Defendants' Releasees.

Lead Counsel intend to move for an award of attorney's fees of up to one-third of the Settlement Amount ($667,000) plus interest, and reimbursement of no more than $50,000 in litigation expenses. Lead Counsel also intend to request reimbursement for Plaintiffs' costs and expenses, collectively not to exceed $2,000 ($1,000 each).

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.     Preliminary Approval Should be Granted, and Class Notice Given, if a Settlement is "Fair, Reasonable, And Adequate" and the Court Will "Likely" be Able to Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464

(S.D.N.Y. 2013).[4] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Thus, "[p]reliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The purpose of the preliminary evaluation is to identify "terms [that] are unacceptable at the outset," and which would render "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." *Newberg on Class Actions* § 11:25 (4th ed. 2002).

Rule 23(e)(2), in turn, sets forth criteria for determining final approval. In evaluating final approval of a settlement, district courts within the Second Circuit "have traditionally considered nine factors, known as the *Grinnell* factors": (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

---

[4] Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

Recent amendments to Rule 23(3)(2)—governing final approval—now require courts to consider the following factors as well:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These new factors "add to, rather than displace, the *Grinnell* factors." *Payment Card*, 330 F.R.D. at 29. As discussed herein, the proposed Settlement merits preliminary approval and the Court should approve the Parties' requested form, manner, and schedule for notice, final approval, and related events because these will fairly apprise Settlement Class Members of the terms of the Settlement and give them adequate opportunity to file claims, submit objections to, or exclude themselves from, the Settlement.

### B.    A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair

In determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rule 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Payment Card.*, 330 F.R.D. at 29. However, the court cannot "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors— such as the reaction of the class to the settlement—may be premature at this stage. *See id.*

Thus, in conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the

7

settlement's substantive terms, *i.e.*, substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at \*11. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at \*11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

### C. Public Policy Favors Settlement of Securities Class Actions

"The decision to grant or deny such approval lies squarely within the discretion of the trial court… and this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'… The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"). This strong judicial policy equally applies here.

## IV. ARGUMENT

### A. The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors

At this stage, courts undertake a preliminary review of the Rule 23(e)(2) factors in determining that the Settlement merits granting preliminary approval and directing notice of the Settlement to be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate

8

after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the relief to the Class is adequate; and (d) the Settlement treats Class Members equitably relative to each other.  Fed. R. Civ. P. 23(3)(2)(A)-(D).

Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to preliminarily consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### 1.      Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the interests of absent Class Members for purposes of Rule 23(e)(2)(A). Plaintiffs and Lead Counsel thoroughly investigated the allegations in the Complaint. The investigation included, among other things, an extensive review and analysis of: (1) all relevant Mesoblast's SEC filings; (2) Mesoblast's other public statements, including press releases and transcripts of Mesoblast's investor calls; (3) all publicly available FDA documents, briefing materials and transcripts concerning Mesoblast's BLA for remestemcel-L; (3) reports of securities and financial analysts; and (4) news articles and other commentary and analysis regarding Mesoblast. Lead Counsel also consulted with FDA and damages experts. In addition to Lead Counsel's factual investigation, Lead Counsel prepared the Complaint, conducted extensive legal research in connection with drafting a detailed response to Defendants' pre-motion to dismiss letter, prepared for and attended the pre-motion to dismiss conference, prepared a detailed mediation statement and reviewed Defendants' mediation submission, and attended the full-day mediation, skillfully negotiating the terms of the proposed Settlement resulting in the Settlement, and drafted the Stipulation and exhibits.

### 2. The Settlement is the Result of Good Faith, Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel

Rule 23(e)(2)(B) considers if "the proposal was negotiated at arm's length." Courts initially presume that a settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties…"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

The Parties participated in an all-day virtual mediation session with retired federal judge and mediator Hon. Gary Feess of Phillips ADR. Prior to the mediation, the Parties exchanged detailed mediation submissions. The mediation was successful, and culminated in the Parties executing the Term Sheet. The negotiations were hard-fought and at arm's-length, and have produced a result that Plaintiffs and Lead Counsel believe to be in the Settlement Class's best interest. The arm's-length nature of the negotiations and Judge Feess's involvement support the conclusion that the Settlement is fair and was achieved free of collusion.

**3.**    **The Settlement is an Excellent Result for the Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $2,000,000 for the benefit of the Settlement Class. This is a highly favorable result given the significant risks of continued litigation. Plaintiffs' expert estimates damages to be between $55.4 and $74.3 million. If Plaintiffs overcame all the obstacles to establishing liability, and prevailed on all of their loss causation and damages theories, the $2.0 million settlement would equate to approximately between 2.7% and 3.7% of the total ***maximum*** damages ***potentially*** available in this Action. In comparison, in 2021, the median ratio of settlement to investor losses for securities class actions was approximately 1.8% of estimated damages. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24 (Fig. 22), attached as Exhibit 1 to the Declaration of Sara Fuks, filed concurrently herewith. Thus, the recovery the Settlement provides exceeds the median recovery realized in securities class action cases in 2021. It is also above recoveries courts have declared reasonable. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2d Cir. 1974), abrogated by *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v.*

11

*Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

### a)  Risks of Proving Liability and Damages

Although Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that continued litigation posed the very real risk that *no* recovery, or a substantially lesser recovery, might only be achieved after the motion to dismiss, summary judgment, class certification, trial, and any appeals, which would take many additional years.

If the Action were to proceed through the motion to dismiss on to summary judgment and trial, Plaintiffs would have to continue to overcome substantial defenses Defendants asserted as to both liability and damages. Indeed, Defendants have vigorously contested their liability for securities fraud. For example, Defendants strenuously argued, and would continue to argue, that their challenged statements were not false or misleading, and constituted inactionable forward-looking statements, opinions, or puffery. Defendants further argued that the challenged statements were not actionable because all material information regarding the Trial was publicly disclosed and Mesoblast was not required to disclose interim FDA feedback during the review process.

Further, Defendants would have continued to argue that even if Plaintiffs could establish a material misstatement or omission, Plaintiffs could not prove the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial

12

aspect of a securities fraud claim"). Here, Defendants are adamant that they had no intent to mislead investors and did not make statements with deliberate recklessness.

Plaintiffs would also have confronted considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). While Plaintiffs would have argued that the declines in Mesoblast's share price were attributable to corrections of the alleged misstatements and omissions concerning Mesoblast's BLA for remestemcel-L, Defendants would have asserted that investors were fully aware of the risk of FDA non-approval and that Plaintiffs therefore could not establish loss causation. Defendants likely would have also asserted that much of the decline in Mesoblast's share price was due to other negative news, and that even if some portion of the decline in Mesoblast's share price was caused by corrective disclosures, damages were minimal.

If Defendants were to prevail on any of their anticipated loss causation, damages, or other arguments, the amount of potentially recoverable damages would be severely reduced. And even if Plaintiffs overcame all of these significant risks and prevailed at trial, such a victory would not have guaranteed the Class an ultimate recovery larger than the Settlement Amount. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at \*20-\*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned

13

securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

In sum, the Parties disagreed on numerous complex issues of fact and law. While Plaintiffs and Lead Counsel believe that this case has substantial merit and that they could successfully counter each of Defendants' arguments, it is nevertheless true that Defendants had serious defenses that, if successful, would have resulted in the Settlement Class recovering *far less* than the proposed Settlement, *or nothing at all*. In the context of these risks, Plaintiffs and Lead Counsel believe that the $2.0 million Settlement is an excellent result for the Class and respectfully submit that preliminary approval is appropriate.

### 4.      Other Factors Established by Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator Lead Counsel selected (subject to Court approval), will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, after Court approval, mail or

14

wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan). SCS is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *In re Altair Nanotechnologies Sec. Litig.*, No. 14 CIV. 7828 (AT), 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (appointing SCS "to supervise and administer the notice procedure as well as the processing of claims"); *IMAX*, 283 F.R.D. at 184 ("In accordance with our direction, lead plaintiff's counsel retained [SCS] to supervise and administer the dissemination of the notice").

Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[5]

Second, the Notices disclose that Lead Counsel intend to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $50,000. This fee request is in line with other settlements approved in this District. *See e.g., In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding attorneys' fees of one-third of settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding attorneys' fees of one-third and holding that this "request…falls comfortably within the range of fees typically awarded in securities class actions"); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third and finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases).

---

[5] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Mesoblast may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of Mesoblast ADS request exclusion (or "opt out") from the Settlement. Such confidential supplemental agreements are customary in settlements and "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at \*5 (N.D. Cal. Oct. 20, 2017) (same); *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at \*11-\*12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

### 5.    The Settlement Treats All Members of the Class Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re*

*Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006).

### 6.     The Remaining *Grinnell* Factors are Neutral or Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the new factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

First, the fact that there has been no formal discovery in this case does not weigh against preliminary approval. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

A defendant's ability to withstand a judgment greater than that secured by settlement, generally, is not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). Here, "the settlement was not driven by any concern about [Mesoblast's] ability to pay. Under these circumstances, ability to pay is not a factor in the settlement, and does not weigh either for or against approval." *Id.* at 340; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008).

17

Finally, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Agent Orange.*, 597 F. Supp. at 762. The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *Independent Energy*, 2003 WL 22244676, at \*4 (noting few cases tried before a jury result in full amount of damages claimed). As discussed above, in light of the risks of continued litigation, the Settlement clearly falls within the range of reasonableness. Accordingly, the Settlement is fair, reasonable, and adequate.

## V.   CERTIFICATION FOR PURPOSES OF SETTLEMENT IS APPROPRIATE

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at \*8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX,* 283 F.R.D. at 186 (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 158 (S.D.N.Y. 2011)). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present

18

intractable management problems . . . is not a consideration when settlement-only certification is requested."). As demonstrated below, the proposed Settlement Class satisfies the applicable requirements of Rule 23(a) and Rule 23(b)(3).

### A.     The Settlement Class Satisfies the Requirements of Rule 23(a)

To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613.

### 1.     Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable means "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although the "[d]etermination of practicability depends on all circumstances, not on mere numbers," *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993), "[i]n the Second Circuit, a proposed class of more than forty members presumptively satisfies the numerosity requirement." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp.*, 2016 WL 7409840, at *2 (S.D.N.Y. Nov. 4, 2016) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Further, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). As of June 30, 2020, there were 116,789,922 Mesoblast ADS outstanding. Given the volume of ADS outstanding, it is likely there are hundreds or thousands of class members, satisfying the numerosity requirement.

### 2.     Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "A single common question may be sufficient to satisfy the commonality requirement." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84–85 (S.D.N.Y. 2007) (citation omitted). In securities actions, "common questions of law and fact are present" as "the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public. . . *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (citation omitted). Here, there are common questions of law and fact relating to whether Defendants' statements and omissions were "materially misleading," whether Plaintiffs sustained damages, and if so, the proper measure of damages. Thus, there are question of law and fact common to the class.

### 3.     Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Merck-Medco*, 504 F.3d at 245; *accord In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). "Typical" does not mean "identical." *Marsh & McLennan*, 2009 WL 5178546, at \*10. The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by Defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.* Plaintiffs alleged a common course of unlawful conduct affecting them and all other Settlement Class Members. Plaintiffs, and each Settlement Class Members purchased Mesoblast ADS in reliance upon the same alleged misrepresentations and omissions that Mesoblast made to

20

the investing public during the Settlement Class Period. Thus, Plaintiffs' and the Settlement Class's interests align and the typicality requirement is satisfied.

### 4.    Adequacy

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A representative party is adequate if: (i) there are no conflicts of interests between the plaintiffs and members of the class; and (ii) their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014); *Sadia*, 269 F.R.D. at 305. Both prongs are met. Plaintiffs' interests do not conflict in any way with those of the Settlement Class. Plaintiffs and the Settlement Class Members all purchased Mesoblast ADS during the Settlement Class Period and were injured by the same alleged false statements and material omissions.

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case …"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal.

21

May 6, 2014) (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement").

Rosen Law utilized its skills and resources to reach the Settlement. Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Lead Counsel's firm resume was filed as Dkt. No. 6-4. The Settlement was achieved after Lead Counsel spent considerable time for the benefit of Mesoblast shareholders. Lead Counsel's work included conducting a thorough investigation, including retaining experts; drafting a detailed amended complaint; opposing Defendants' pre-motion letters and attending the pre-motion to dismiss conference; and participating in the mediation and settlement discussions, including drafting a mediation statement and reviewing Defendants' mediation submission. Thus, Lead Counsel should be appointed as Class Counsel.

### B. Common Questions Predominate and a Class Action is the Superior Method of Adjudication

In certifying a class, the court must also consider whether the proposed class meets one of the requirements of Rule 23(b). *In re Initial Pub. Offering*, 243 F.R.D. at 84. Here, the Settlement Class satisfies the requirements of Rule 23(b)(3) in that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Courts generally focus on the liability issue in deciding whether the predominance requirement is met," *Marsh & McLennan,* 2009 WL 5178546, at *11, and as noted by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. In this case, the common question of whether Defendants made false and

misleading statements predominates. *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (whether Defendants' statements were materially misleading to a reasonable investor is an issue "subject to generalized proof, and thus applicable to the class as a whole") (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *3 (S.D.N.Y. Sept. 4, 2013). Rule 23(b)(3) is satisfied because the Class's claims depend on demonstrating and proving the alleged violations of the Exchange Act.

For the superiority analysis, Rule 23(b)(3) considers the following factors relevant: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[6] *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *17 (S.D.N.Y. Aug. 13, 2018). Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is unlikely that most Settlement Class Members would be able to obtain relief without class status. Further, any Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement.

Accordingly, the proposed Settlement Class meets all the requirements of Rule 23(b)(3) and Rule 23(a) and the Court should certify the Settlement Class for settlement purposes only.

## VI.　THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE

Notice of a settlement must satisfy Rule 23, the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the

---

[6] This is a settlement in lieu of a trial, so the Rule 23(b)(3)(D) inquiry is not required. *See Amchem.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

23

circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the ability to opt out of or object to the settlement. *Id.* at 27; *JP Morgan Chase*, 2014 WL 1224666, at *17 ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and due process impose similar requirements. 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

The proposed Notice provides detailed information including: how to file claims, object to or opt-out of the Settlement; a description of the claims; the Plan; and the fees and expenses to be sought by Lead Counsel. The Notice also sets forth instructions to securities brokers and nominees to provide notice to those for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[7] If the Court grants preliminary approval, SCS[8] will mail the Postcard Notice to Settlement Class Members who can be identified through reasonable effort; the Summary Notice will be published in *Investor's Business Daily* and disseminated over *GlobeNewswire*; and SCS will maintain a website where the Long Notice and Proof of Claim form will be posted, along with other information that Settlement Class Members may find useful regarding the litigation, the Settlement, and their claims decisions.

---

[7] *See* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

[8] Plaintiffs request that the Court approve retention of SCS as the claims administrator for this Action.

24

Courts routinely find these methods of notice sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *Advanced Battery*, 298 F.R.D. at 183 n.3 (citing cases); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements."). Accordingly, the form, content, and methods of dissemination of the Notice should be approved.

## VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| Event | Proposed Timing |
|---|---|
| Deadline to mail Postcard Notice Members (the "Notice Date") | 31 days after entry of Preliminary Approval Order (Preliminary Approval Order ¶7b) |
| Deadline to publish Summary Notice | Within 10 business days after the Notice Date (Preliminary Approval Order ¶7d) |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | Not later than 35 days prior to the Settlement Hearing (Preliminary Approval Order ¶25) |
| Deadline for exclusion requests and objections | 21 days prior to the Settlement Hearing (Preliminary Approval Order ¶¶12, 15) |
| Deadline for filing reply papers | 7 days prior to the Settlement Hearing (Preliminary Approval Order ¶25) |
| Deadline to submit Claim Forms | 90 days after the Notice Date (Preliminary Approval Order ¶9) |
| Settlement Hearing | To be determined by the Court. Not earlier than 121 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## VIII.   CONCLUSION

Plaintiffs respectfully request the Court: preliminarily approve the Settlement; preliminarily certify the Settlement Class; approve the Notice; and set the Settlement Hearing.

DATED: March 28, 2022                    **THE ROSEN LAW FIRM, P.A.**

By: */s/ Sara Fuks*
Laurence Rosen
Sara Fuks
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
lrosen@rosenlegal.com
sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs and the proposed
Settlement Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Sara Fuks*
Sara Fuks

27