**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRENE KRISTAL, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MESOBLAST LIMITED, SILVIU ITESCU, JOSH MUNTNER, and FRED GROSSMAN,<br><br>    Defendants. | **CASE No.: 7:20-CV-08430-PMH**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF**
**ALLOCATION AND FINAL CERTIFICATION OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

I.      INTRODUCTION.......................................................................................................... 1

II.     THE FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION............... 3

III.    STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND *GRINNELL* .. 3

IV.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............................ 4

   A.   The Settlement Is Procedurally Fair ...................................................................... 4

      1.   Plaintiffs and Lead Counsel Adequately Represented The Class ............................ 5

      2.   The Settlement is the Result of Arm's-Length Negotiations..................................... 6

   B.   The Settlement is Substantively Fair: the Relief Provided is Adequate, Taking into
        Account the Costs, Risks, and Delay of Continued Litigation ..................................... 8

      1.   The Complexity, Expense, and Likely Duration of the Litigation Supports Approval
           of the Settlement........................................................................................................ 8

      2.   Risks of Establishing Liability and Damages ............................................................ 10

      3.   Risks of Maintaining Class Action Status.................................................................. 14

      4.   The Settlement Amount is Within the Range of Reasonableness in Light of the Best
           Possible Recovery and Attendant Risks of Litigation ............................................... 15

      5.   Rule 23(e)(2)(C)(ii)-(iv) and 23(e)(3) ..................................................................... 16

      6.   The Settlement Treats Class Members Equitably Relative to Each Other (Rule
           23(e)(2)(D))............................................................................................................... 18

      7.   The Settlement Class's Reaction to the Settlement Supports Final Approval ....... 19

      8.   The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Final Approval
           .................................................................................................................................... 19

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ............................... 21

V.      THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS ................ 22

VI.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS ..................................... 23

VII.    CONCLUSION ............................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)...................................................................................... 5

*Beach v. JPMorgan Chase Bank, N.A.*,
  2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ........................................................... 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 3119374 (S.D.N.Y. Aug. 5,2010).......................................................... 14

*Cagan v. Anchor Sav. Bank FSB*,
  No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................ 16

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ........................................................................ 14

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y., 2019).................................................................. 8, 18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................................. 7, 21

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)................................................................................... 5

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ..................................... 12

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .............................................................................. 12

*Fishoff v. Coty Inc.*,
  No. 09 CIV. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)..................... 11

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).......................................................... 7

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
  925 F.3d 63 (2d Cir.)........................................................................................... 17

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .............................................................. 18

*Hicks v. Morgan Stanley,*
*& Co.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................. 10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................ 10

*In re Alloy, Inc. Sec. Litig.*,
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................................................ 9

*In re Altair Nanotechnologies Sec. Litig.*,
2016 WL 7647043 (S.D.N.Y. Jan. 22, 2016) ............................................................. 17

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................... 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................. 9, 12

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................... 20

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................... 15, 20

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................................................ 12

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................... 9

In re Facebook, Inc. IPO Sec. & Derivative Litig.,
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .............................. 12

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................ 9, 21

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... *passim*

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................................................................... 8, 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................... 22

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................ *passim*

*In re Indep. Energy Holdings PLC*,
  No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............................... 8

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................................... 2, 8

*In re Marsh & McLennan Cos., Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................................ 14, 21

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................... 9

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010) ......................................................................... 23

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................ 14

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.) ........................................................................................... 6

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) .................................................................................. 5, 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................... 4

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................................................... 6

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................................. 13

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................... 14, 19

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................................ 21

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................ 16

*Pantelyat v. Bank of America, N.A.*,
  2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ........................................................ 21

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................. 6, 15

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ *passim*

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................................... 18, 22

## Statutes

15 U.S.C.A. § 78u-5(c) ...................................................................................... 11

## Rules

Fed. R. Civ. P. 23 .......................................................................................... *passim*

## Other Authorities

Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904 (2018) .................................. 4

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Lead Plaintiff Frank Fayz and Named Plaintiff David Caudle (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement, for approval of the proposed plan of allocation of the Net Settlement Fund (the "Plan of Allocation"), and class certification.[1]

## I.    INTRODUCTION

Subject to this Court's approval, the proposed Settlement resolves all claims alleged in the above-captioned action (the "Action") against all Defendants in exchange for a $2,000,000 cash payment (the "Settlement Amount") to the Settlement Class, which has been deposited into an escrow account in accordance with the terms of the Stipulation. The Settlement is the result of Plaintiffs' and their counsel's vigorous litigation efforts and extensive arm's-length negotiations among the Parties, and it is fair and reasonable in light of the strengths and weakness of the case and the risks and expense of continued litigation. By the time the Settlement had been reached, Lead Counsel had, among other things: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, (a) a review and analysis of Mesoblast Limited's ("Mesoblast" or the "Company") filings with the SEC, Defendants' public statements, news articles concerning Mesoblast, analyst reports, and transcripts of Mesoblast's investor calls, (b) a review and analysis of FDA briefing materials and other FDA documents

---

[1] Unless otherwise noted, all capitalized terms defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated March 28, 2022, (the "Stipulation") (ECF No. 70) or in the accompanying Declaration of Sara Fuks in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plan of Allocation and Final Certification of the Settlement Class; and (II) Lead Counsel's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fuks Declaration" or "Fuks Decl."). All citations to "¶" and "Ex. ___" herein refer, respectively, to paragraphs in, and Exhibits to, the Fuks Declaration.

concerning Mesoblast's Biologics License Application ("BLA") for remestemcel-L; and (c) consultation with damages and FDA experts; (ii) drafted the Amended Class Action Complaint ("Amended Complaint" or "Complaint") based on the investigation; (iii) reviewed and analyzed Defendants' pre-motion to dismiss letter served on Plaintiffs, and drafted and served a response thereto; (iv) participated in the pre-motion to dismiss conference before the Court; (v) prepared a detailed mediation submission and reviewed Defendants' mediation submission; and (vi) attended a full-day mediation session before a mediator who is a retired federal judge. As a result, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case, which enabled them to make an informed decision regarding the Settlement's propriety.

While Plaintiffs believe their claims have merit, there is no guarantee that the Court would not have granted Defendants' anticipated motion to dismiss the Complaint under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Moreover, even if Plaintiffs successfully defeated Defendants' anticipated motion to dismiss, they would face substantial risks and expense in proving Defendants' liability and damages. And, of course, a better result after years of additional litigation was far from certain. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.").

For the reasons discussed herein and in the Fuks Declaration, Plaintiffs and Lead Counsel believe that the proposed Settlement is in the Settlement Class's best interests and is fair, reasonable, and adequate. It satisfies the requirements of Rule 23 and provides a significant recovery for the Settlement Class. Additionally, to date, no objections and only one request for exclusion has been received from any Settlement Class Member. ¶5, Ex. 1 at ¶14. Accordingly,

2

Plaintiffs respectfully request that the Court finally certify the Settlement Class, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3), and grant final approval of the Settlement.

Plaintiffs also move for approval of the Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to distribute the proceeds of the Net Settlement Fund to Settlement Class Members fairly and equitably. ¶¶61-67, Ex. 1 at Ex C, (Notice pp. 10-14). As such, Plaintiffs respectfully submit that it too should be approved.

## II.  THE FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Fuks Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the factual background and the nature of the claims asserted (¶¶15-21); the work done by Plaintiffs and Lead Counsel to prosecute the Action (¶¶22-26); the risks and uncertainties of the litigation (¶¶36-50); the negotiations leading to the Settlement (¶¶27-30); and the terms of the Plan of Allocation (¶¶61-67).

## III.  STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND *GRINNELL*

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[2] Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)  have the class representatives and class counsel adequately represented the class;
(B)  was the proposal negotiated at arm's length;
(C)  is the relief provided for the class adequate, taking into account:
     (i)  the costs, risks, and delay of trial and appeal;

---

[2] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    does the proposal treat class members equitably relative to each other.

The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (2018). For this reason, the Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well relevant, non-duplicative *Grinnell* factors.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Settlement Is Procedurally Fair

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Each aspect of procedural fairness is satisfied here.

### 1.    Plaintiffs and Lead Counsel Adequately Represented The Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In assessing adequacy, courts "inquir[e] as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) ("In considering Rule 23(a)(4)'s adequacy requirement, the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).[3]

Here, Plaintiffs have adequately represented the Settlement Class by vigorously pursuing their shared claims against Defendants, including by communicating with Lead Counsel on case developments, reviewing significant filings, and conferring with Lead Counsel concerning the settlement negotiations. ¶97; Exs. 6 and 7. Moreover, Plaintiffs—investors who purchased Mesoblast American Depository Shares ("ADSs") during the Settlement Class Period and were damaged as a result—have suffered the same injury as other Settlement Class Members, share the interests of other Settlement Class Members in obtaining the largest possible recovery from Defendants, and have no interests antagonistic to those of other Settlement Class Members. They

---

[3] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106–07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

5

have, therefore, adequately represented the Settlement Class. *See Patriot*, 828 Fed. App'x. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest").

Lead Counsel have also adequately represented the Settlement Class. Counsel is highly qualified and experienced in securities and other complex litigation.[4] They vigorously prosecuted the Action against skilled opposing counsel and achieved an excellent result. ¶¶22-30. Based on their expertise, experience, and the work done in this case, Lead Counsel, with a thorough understanding of the strengths and weaknesses of the Action, respectfully recommend that final approval of the Settlement is in the best interests of the Settlement Class. ¶12; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (judgment of counsel "who have extensive experience in prosecuting complex class actions" is entitled to "great weight.").

### 2. The Settlement is the Result of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Second Circuit recognize that settlements reached after arm's-length negotiations between experienced counsel are afforded a presumption of fairness. *See, e.g.*, *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the

---

[4] *See* Ex. 5 (Rosen Law's firm resume).

recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Wal-Mart*, 396 F.3d at 116 (similar); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) ("courts should give proper deference to the private consensual decision of the parties" and "keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.").

Here, the Settlement was the result of vigorous arm's-length between counsel who are highly experienced in securities litigation, and who were acutely aware of the risks of continued litigation. ¶¶27-47. Settlement negotiations did not commence until after Lead Counsel engaged in an extensive factual investigation, and had the opportunity to review, evaluate, and respond to Defendants' pre-motion to dismiss letter as well as participate in a telephonic pre-motion to dismiss conference before the Court.

Shortly after the pre-motion to dismiss conference, the Parties agreed to participate in mediation. On February 2, 2022, the Parties attended a mediation with retired federal judge Hon. Gary Feess of Phillips ADR. Prior to the mediation, the Parties exchanged detailed mediation statements. The mediation was successful. After extensive, hard-fought negotiations with Judge Feess's assistance, the Parties reached a settlement in principle and executed a term sheet. ¶28. Judge Feess noted that the negotiations were "conducted in a diligent and conscientious manner" and that "Counsel for all Parties demonstrated their deep understanding of the factual and legal issues in this Action, the relative strengths and weaknesses of their positions, and the significant risks of continued litigation." Ex. 3, Feess Decl., ¶13. Judge Feess further recognized that all negotiations were conducted at "arms'-length" and in "good faith." *Id*. Judge Feess's participation in the instant Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's

involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

> **B.      The Settlement is Substantively Fair: the Relief Provided is Adequate, Taking into Account the Costs, Risks, and Delay of Continued Litigation**

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of Grinnell factors.").[5]  As discussed below, each of these factors supports approval of the Settlement.

> **1.      The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

"Courts consistently have held that the expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Luxottica*, 233 F.R.D. at 316.  In general, "the more complex, expensive, and time consuming the future litigation, the more

---

[5] *See also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y., 2019) ("Rule 23(e)(2)(C)(i) incorporates the factors set out in *Grinnell*, 495 F.2d at 463, and courts in this Circuit have long utilized the Grinnell nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.").

beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true in securities class actions, where "federal courts . . . have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *see also In re Flag Telecom Holdings, Ltd. Securities Litigation*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("[s]ecurities class actions are generally complex and expensive to prosecute"). This case is no exception.

As discussed in detail in the Fuks Declaration and below, this a factually complex case, and there was also a significant risk that Plaintiffs would be unable to establish liability, loss causation, or damages. ¶¶36-47; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Moreover, the settlement was achieved relatively early in the litigation. Assuming, *arguendo*, that Plaintiffs survived Defendants' anticipated motion to dismiss, which was certainly not guaranteed given the heightened pleading standard of the PSLRA, continued litigation through trial and appeals would impose substantial additional costs on the Settlement Class, and would result in extended delays before any recovery could be achieved. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) ("complex security fraud issues were likely to be litigated aggressively, at substantial expense to all parties"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138–39 (S.D.N.Y. 2010) ("even if the Class were to win a judgment at trial, the additional delay of trial, post-trial motions and appeals could deny the Class any actual recovery for years, further reducing its value"). In contrast, the Settlement provides an immediate and substantial $2,000,000

9

recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation—including the risk of no recovery at all. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("the present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the significant risk that the Class could receive no recovery"); *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). Accordingly, this factor supports final approval of the Settlement.

### 2.     Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Id.*

While Lead Counsel believe that Plaintiffs' claims are meritorious, they also recognize that they faced substantial obstacles to proving liability and damages, as previewed by Defendants' pre-motion to dismiss letter. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

10

**Risks to Proving Liability:**  At the time the Settlement was reached, a motion to dismiss was not yet tested, however, the Court held a pre-motion to dismiss conference to discuss the anticipated motion. In the pre-motion to dismiss letter and at the conference, Defendants raised a number of arguments, which, if the Court accepted, would have resulted in their dismissal from the case or dismissal of the Action entirely. ¶37. For example, Defendants' contested Plaintiffs' allegations of a material misstatement or omission. In their pre-motion letter Defendants argued, among other things, many of the challenged statements are forward-looking under 15 U.S.C. § 78u-5(c)(2) & (3) and were accompanied by meaningful cautionary language that warned investors of the risks involved when seeking FDA approval. Defendants also argued, and would argue on the motion to dismiss, that many of the statements are subjective, non-actionable opinions about Mesoblast's trial methodology and implications of the trial results. Defendants would continue to argue that their statements concerning the BLA were opinions and statements of corporate optimism that were based on genuinely held beliefs and that the FDA's comments were merely tantamount to interim feedback, which Defendants were not required to disclose. *Id.*

Even if Plaintiffs could establish a material misstatement or omission, they would still have to prove the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness.  ¶42.  The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, No. 09 CIV. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd,* 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (recognizing "the substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult."). While Plaintiffs, in

11

good faith, alleged that Defendants knew about the FDA's admonitions concerning the Trial's design and concealed it because they were motivated to continue raising money, it is possible that after discovery Plaintiffs may learn that Defendants lacked the requisite state of mind. Thus, whether Plaintiffs would have prevailed in response to these, and other, arguments at the pleading stage was far from certain.

At a minimum, there was a very real risk that the Court could have granted Defendants' anticipated motion, especially in light of the strict pleading standards of the PSLRA. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (noting that the PSLRA "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail" and that this is "not an easy standard to comply with."); *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."). And, of course, even if Plaintiffs prevailed against a motion to dismiss, they would still have to prove their case. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial"); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) ("Because Plaintiffs' ability to establish the liability of Defendants is 'far from certain," this factor weighs in favor of settlement approval.").

**Risks to Establishing Loss Causation and Damages:** Plaintiffs also would have faced considerable challenges in proving loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to

12

recover'"). While Plaintiffs would have argued that the declines in Mesoblast's ADR price were fully attributable to corrections of the alleged misstatements and omissions, Defendants would have asserted that much of the decline was due to other negative news. ¶45. Plaintiffs would have to retain an expert to produce a trading model that would account for general market and industry factors while isolating the impact of Defendants' false statements. *Id*. Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Global Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Id.* If Defendants were to prevail on loss causation arguments at any stage, it would have substantially reduced the amount of potential damages.

Additionally, in complex securities cases, it is axiomatic that the Parties would rely on expert testimony to assist the jury in determining damages. *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). Here, Defendants almost certainly would have proffered their own damages expert(s), who would have no doubt presented conflicting conclusions and theories for Meosblast's ADS price declines on the alleged disclosure dates. ¶45; s*ee also IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579–80 (S.D.N.Y. 2008).

Consequently, even if liability were established at trial, "a jury could find that damages

were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002). If a jury were to accept Defendants' arguments, damages in this case could be greatly reduced, or even eliminated. *In re Marsh & McLennan Cos., Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 3.    Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, the class had not yet been certified, and the Court could disagree. ¶¶38-39. And, "even if certified, the class would face the risk of decertification." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 5,2010) ("Because there is a real risk that class certification may not be granted, or, if granted, it may later be rejected on appeal or

14

decertified, the Court concludes that this factor also weighs in favor of approving the proposed settlement.").

### 4.   The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts often analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Id.* at 462. "The determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012). Instead, "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *Shapiro*, 2014 WL 1224666, at *11 (settlement judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Thus, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on their claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' **best case scenario**—the total **maximum** damages **potentially** available in this Action would be between approximately $55.4 million and approximately $74.3 million. ¶48. Accordingly, the $2,000,000 Settlement Amount represents between 2.7% and 3.7% of the total

15

*maximum* damages ***potentially*** available in this Action. *Id.* Defendants would invariably contest both liability and damages. And even if Defendants were unsuccessful in demonstrating that damages were not zero they could certainly present arguments that would reduce the damages amount.

A recovery of between 2.7% and 3.7% of the Settlement Class's maximum recoverable damages is well within the range of reasonableness. This recovery is larger than the median ratio of settlement to investor losses for securities class actions in 2021 which was approximately 1.8% of estimated damages. Ex. 2, NERA Report (p. 24, Fig. 22). The recovery is also above those that court have held as reasonable. *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million.").

### 5. Rule 23(e)(2)(C)(ii)-(iv) and 23(e)(3)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors weigh in favor of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, after Court approval, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation).[6] Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]

**Rule 23(e)(2)(C)(iii):** The relief provided for the Settlement Class is also adequate when considering the terms of the proposed award of attorneys' fees. As discussed in detail in the accompanying fee memorandum, the proposed attorneys' fees of one-third to be paid upon approval by the Court, are reasonable in light of Lead Counsel's substantial work and efforts, their significant investment of resources in the case, their skillful prosecution of the action for the benefit of the Settlement Class, the risks that they faced in the litigation, the overall benefit of the Settlement achieved, and awards in similar complex securities class action cases. *See Fresno Cty.*

---

[6] SCS is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g.*, *In re Altair Nanotechnologies Sec. Litig.*, 2016 WL 7647043, at *1 (S.D.N.Y. Jan. 22, 2016) (appointing SCS "to supervise and administer the notice procedure as well as the processing of claims"); *IMAX*, 283 F.R.D. at 184 ("In accordance with our direction, lead plaintiff's counsel retained [SCS] to supervise and administer the dissemination of the notice").

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

17

*Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 66 (2d Cir.), *cert. denied,* 140 S. Ct. 385, 205 L. Ed. 2d 218 (2019) (affirming percentage method and Lead Counsel's award of attorneys' fees of one-third of the settlement fund plus interest). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv) & 23(e)(3):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of shares of Mesoblast ADSs eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. Such confidential supplemental agreements are customary in class action securities settlements and "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) (approving confidentiality of opt-out termination agreement); *see also Christine Asia Co.*, 2019 WL 5257534, at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

**6. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))**

Rule 23(e)(2)(D) requires that the Court assess whether "the proposal treats class members equitably relative to each other." The Settlement does that. All Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss calculated under the Plan of Allocation. Ex. 1 at Ex. C (Notice at pp. 10-14); Sec. IV, *infra* (regarding Plan of Allocation); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable pro rata distribution of the

18

Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

### 7. The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Ex. 1 at Ex. C (Notice at pp. 15-17). There were 51,130 potential Settlement Class Members who were mailed Postcard Notices or emailed direct links to the Notice and Claim Form.  Ex. 1., Bravata Decl.  ¶8.  To date, only one purported request for exclusion has been received, one inquiry on how to file an exclusions was made (but no exclusion request received), and no objections have been filed with the Court. *Id.* ¶¶14-15.[8] The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement. *See Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### 8. The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Grinnell* also identifies two factors that are not coextensive the Rule 23(e)(2) factors. These factors, viewed in light of the Rule 23(e)(2) factors set forth above, support final approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** The third *Grinnell* factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the

---

[8] The deadline to request exclusion from, or to object to any aspect of, the Settlement is July 25, 2022.  If any additional exclusions or objections are received after the date of this filing, they will be addressed on reply.

defenses asserted by defendants, and the value of the plaintiff's causes of action for purposes of settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. "To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Here, prior to agreeing to the Settlement, Lead Counsel, among other things, conducted a detailed investigation of the claims, consulted with FDA and loss causation/damages experts, drafted the 85-page Complaint, analyzed the arguments set forth in Defendants' pre-motion to dismiss letter, and engaged in a mediation with Defendants, including preparing a detailed mediation statement. ¶11. As a result of these efforts, Lead Counsel had a thorough understanding of the claims and defenses asserted in this case, as well as the significant risks to establishing liability and damages, and collecting a greater judgment. This understanding enabled Lead Counsel to negotiate the Settlement intelligently and responsibly. *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Thus, the fact that there has been no formal discovery in the Action does not weigh against final approval. *See, e.g.*, *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

20

**Defendants' Ability to Withstand a Greater Judgement:** Defendants' ability to withstand a greater judgment (seventh *Grinnell* factor) does not counsel against final approval. Plaintiffs believe that Defendants have the ability to pay a judgment in excess of the $2,000,000 Settlement Amount. However, "defendants' ability to withstand a higher judgment . . . standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *IMAX*, 283 F.R.D. at 191. Indeed, Courts have repeatedly recognized that this factor does not weigh against approval of a settlement where, as here, the other factors weigh in favor of approving the settlement. *See id.*; *Flag Telecom*, 2010 WL 4537550, at *19 ("the mere ability to withstand a greater judgment does not suggest the settlement is unfair"); *Pantelyat v. Bank of America, N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) ("While Defendants could likely withstand greater judgment, its capacity does not, standing alone, suggest that the settlement is unfair.").

In sum, the Rule 23 factors, as well as the *Grinnell* factors, strongly support a finding that the Settlement is fair, reasonable and adequate.

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan of allocation "must be fair and adequate" to warrant approval. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192. Accordingly, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh*, 2009 WL 5178546, at *13.

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website. Ex. 1, Bravata Decl., Ex. C (Notice) at 10-14. Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert with the objective of equitably

distributing the Net Settlement Fund. ¶13. The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation will be based on several factors, including when the Mesoblast ADSs were purchased and sold, the purchase and sale price of the Mesoblast ADSs, and the estimated artificial inflation in the price of the securities at the time of the purchase or sale. ¶65; *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *10 (S.D.N.Y. Dec. 19, 2014) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). The Net Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").[9]

Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who suffered damages as a result of the fraudulent conduct alleged in the Action. *See Focus Media*, 2014 WL 4401280, at *9. As of the date of this filing, no objections to the Plan of Allocation have been received. Ex. 1 at ¶15. For these reasons, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

## V. THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in its Preliminary Approval Order, and Plaintiffs executed the notice program in accordance with the provisions therein. ¶¶51-59. Notice

---

[9] If a Claimant has an overall market *gain* with respect to his, her, or its overall transactions in Mesoblast ADRs during the Settlement Class Period, the Claimant is not entitled to recover under the Plan of Allocation. Ex. 1 Bravata Decl., Ex. C, at 13. Moreover, if a Claimant purchased Mesoblast ADRs during the Settlement Class Period, but did not hold any of those shares through the alleged corrective disclosure dates, the Claimant is not a Settlement Class Member and would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud. *Id*. at 11.

was given to Settlement Class Members via Postcard Notice, the Settlement Website (www.strategicclaims.net), and publication. *Id.* Copies of the Court-approved Postcard Notice were timely mailed by the Court-appointed Claims Administrator, SCS, to 29,398 potential Settlement Class Members. Additionally, 21,732 potential Settlement Class Members were emailed direct links to the Notice and Claim Form. ¶¶55-56; Ex. 1, Bravata Decl., ¶¶6-7.

On May 23, 2022, the Court-approved Summary Notice was published in *Investors' Business Daily* and transmitted once over *GlobeNewswire*. ¶58; Ex. 1, Bravata Decl., ¶11. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. Ex. 1, Bravata Decl., Ex. D. Finally, the Claims Administrator posted the Notice, Claim Form, Stipulation, and other relevant documents online at the Settlement Website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. ¶59; Ex. 1, Bravata Decl., ¶¶12-13. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See Advanced Battery*, 298 F.R.D. at182-83 n.3 (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts"); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical").

## VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The Court's Preliminary Approval Order preliminarily certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). ECF No. 60. Nothing has changed to alter the propriety that decision, and Plaintiffs respectfully request that the Court affirm its prior determinations.

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation, and finally certify the Settlement Class for settlement purposes.

Dated:  July 11, 2022

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Sara Fuks*
Sara Fuks
Laurence Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
sfuks@rosenlegal.com
lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the proposed Settlement Class*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Sara Fuks*
Sara Fuks

25