**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRENE KRISTAL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MESOBLAST LIMITED, SILVIU ITESCU, JOSH MUNTNER, and FRED GROSSMAN,<br><br>Defendants. | **CASE No.: 7:20-CV-08430-PMH**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III.    ARGUMENT.................................................................................................. 3

    A.      The Common Fund Doctrine Applies to the Settlement ................................... 3

    B.      The Court Should Award a Reasonable Percentage of the Common Fund .... 4

    C.      The Requested Attorneys' Fees Are Reasonable ............................................ 6

        1.      The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ...................................................................................... 6

        2.      The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee .................................................................................. 8

    D.      Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable ................................................ 10

        1.      Time and Labor Expended Support the Requested Fee ...................... 10

        2.      The Risks of Litigation Support the Requested Fee ........................... 12

        3.      The Magnitude and Complexity of the Action Support the Requested Fee................................................................................................ 16

        4.      The Quality of Lead Counsel's Representation Supports the Requested Fee................................................................................................ 18

        5.      The Requested Fee in Relation to the Settlement Amount ................. 19

        6.      Public Policy Considerations Support the Requested Fee .................. 19

        7.      The Reaction of the Class to Date Supports the Requested Fee ......... 20

    E.      Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .................................................................. 21

    F.      Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)...................................................................................... 22

IV.     CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................................................................ 2

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................................................ 16

*Anwar v. Fairfield Greenwich Ltd.*,
  2012 WL 1981505 (S.D.N.Y. June 1, 2012) ........................................................................ 6

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ................................... 11

*Asare v. Change Group of New York, Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ..................................................................... 10

*Athale v. Sinotech Energy Ltd.*,
  2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ...................................................................... 9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................. 4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................................. 3

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ......................... 13

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................................... 12

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................... 17, 20

*Cornwell v. Credit Suisse Grp.*,
  2011 WL 13263367 (S.D.N.Y. July 18, 2011) ...................................................................... 9

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................................................................. 6, 9

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ........................................................................................................... 15

*Fogarazzo v. Lehman Bros.*,
  No. 03 CIV. 5194 SAS, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)......................................... 7

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...................................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................. 6, 9

*Hicks v. Morgan Stanley,*
  *et al.*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................... 3, 6, 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...................................................................... 16

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006).................................................... 18, 19

*In re Akazoo S.A. Sec. Litig.*,
  No. 1:20-CV-01900-BMC, 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ......................... 7, 23

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................ 16, 17

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................................... 15

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................ 15

*In re Blech Sec. Litig.*,
  No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ................................ 7

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005)................................................................ 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)........................................................................ 15

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...................................................... 20

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................................. *passim*

iii

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) .......................................................... 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................... 5, 9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .......................................................... 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................................................. *passim*

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................ 7

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................................................... 23

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... *passim*

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...................................... 7

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................... 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................... 21

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................ 10

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................................... 6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. 2009)...................................................................... 23

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................... 16

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................. 22

*In re Qudian Inc. Sec. Litig.*,
    No. 1:17-CV-09741-JMF, 2021 WL 2328437 (S.D.N.Y. June 8, 2021)...................................23

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).......................................................................................... 6

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................... 3, 18, 23

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................ 5

*Johnson v. Brennan*,
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)........................................................ 5, 6

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................................ 16

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................... 7

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................. *passim*

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)....................................................................................... 4

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................................................................... 4

*Puddu v. 6D Glob. Techs., Inc.*,
    No. 15-CV-8061 (AJN), 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ................................... 7

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)................................................................................ 21

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................................. 15

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)..................................................................................... 8, 9

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................................................... 12

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) ..................................................................................... 2

*Springer v. Code Rebel Corp.*,
  No. 16-CV-3492 (AJN), 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ..................................... 7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................................. 7

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ............................................................. 16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) ......................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................. 20

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........................... 7, 23

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
  775 F. App'x 51 (3d Cir. 2019) .............................................................................. 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................... *passim*

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ......................................................... 9

## Statutes

15 U.S.C. § 78u-4 ....................................................................................... 5, 14, 22

## Rules

Fed. R. Civ. P. 23............................................................................................. 14

Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law" or "Lead Counsel"), respectfully requests that the Court grant their motion for an award of attorneys' fees in the amount of one-third of the Settlement Fund, or $666,667 plus interest earned at the same rate as the Settlement Fund. Lead Counsel also seeks reimbursement of: (i) $22,670.50 in litigation expenses that Lead Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $2,000 in total costs and expenses incurred by the Court-appointed Lead Plaintiff Frank Fayz and named plaintiff David Caudle ("Plaintiffs") directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $2,000,000 in cash in exchange for the resolution of the Action, represents a highly favorable result for the Settlement Class, particularly when juxtaposed against the significant hurdles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced, and would continue to face numerous hurdles, such as overcoming Defendants' anticipated motion to dismiss, and if successful, establishing liability, loss causation, and damages in this Court. The risk of losing was very real, and it was greatly enhanced by the fact that Plaintiffs would be litigating against a corporate defendant represented by skilled defense

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement (ECF No. 70, the "Stipulation") dated March 28, 2022 or the concurrently filed Declaration of Sara Fuks in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Settlement and Plan of Allocation and Final Certification of the Settlement Class; and (II) Lead Counsel's Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fuks Declaration" or " Decl."). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to the Fuks Declaration.

counsel, under the heightened pleading standard of the PSLRA. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").[2] Moreover, even if Plaintiffs had prevailed at the pleadings stage and won at trial, Plaintiffs faced further risks that the litigated judgment would be appealed, resulting in additional litigation before the Second Circuit Court of Appeals.  Despite these risks, Lead Counsel collectively devoted more than 666 hours to the Action, all on a contingency basis with no guarantee of ever being paid.

Lead Counsel believes that an attorneys' fee award of one-third of the Settlement Amount properly reflects the many significant risks counsel took, as well as the excellent result achieved. When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the cost and expense reimbursements requested by Plaintiffs and their counsel are likewise reasonable in amount, and such costs and expenses were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too should be approved.

## II.    FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Fuks Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action and the nature of the claims asserted (¶¶15-21); the negotiations leading to Settlement

---

[2] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

(¶¶27-30); the risks and uncertainties of continued litigation (¶¶36-50); and a description of the services Lead Counsel provided for Settlement Class's benefit (¶¶22-26).

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

"The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.* at *2; *see also Hicks v. Morgan Stanley, et al.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them, an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley*

*v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)).  All these elements are present here: Lead Counsel's efforts have conferred a substantial benefit ($2,000,000 in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group—the Settlement Class Members. *Id.* Accordingly, the Court should award attorneys' fees from the common fund.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]"). Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method. *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most

significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011). "In contrast, the lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) ; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" (*id.*), or "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005), *as*

*amended* (Feb. 25, 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at \*14-15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at \*10 (similar).

### C.    The Requested Attorneys' Fees Are Reasonable

#### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's fee request of one-third of the Settlement Amount is an appropriate fee request in this case and is in the range of fee requests that have been awarded in the Second Circuit in comparable securities class actions. *See In re Lloyd's Am. Trust Fund Litig.,* 2002 WL 31663577, at \*26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating that "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at \*21 (S.D.N.Y. Dec. 18, 2019)("the 33 1/3% fee requested by Lead Counsel in this Action is consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at \*3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Vaccaro v. New Source*

*Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement prior to formal discovery); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding one-third of $2,795,000 settlement); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *19 (S.D.N.Y. Dec. 19, 2014) (awarding one-third of $3.8 million settlement); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *Springer v. Code Rebel Corp.*, No. 16-CV-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (awarding one-third of $1 million settlement prior to motion to dismiss); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding one-third of $13 million settlement); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 million settlement and collecting cases); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) (awarding one-third of $7.5 million settlement); *Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (awarding one-third of $400,000 settlement); *In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding one-third of $4.9 million settlement prior to motion to dismiss).

Here, Lead Counsel developed a unique theory of the case, gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims through an extensive investigation, consultation with experts, and a mediation with Defendants' Counsel and a professional mediator following the pre-motion to dismiss conference, and achieved a highly favorable settlement long before trial. Lead Counsel's ability to build a solid case from essentially scratch, and to then negotiated the Settlement, sparing

7

the Settlement Class the significant risks Plaintiffs would have faced at each stage of the litigation—including motion to dismiss briefing, class certification, on summary judgment, at trial, and on appeal—not to mention the years the Settlement Class would have had to wait for a recovery, if any.  Under such circumstances, Lead Counsel should be rewarded for their efficient and effective advocacy.

Indeed, one of the benefits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel have developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the benefits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement"); *Maley*, 186 F. Supp. 2d at 373 ("In the context of a complex class action, early settlement has far reaching benefits in the judicial system."). In sum, Lead Counsel's request for one-third in attorneys' fees is appropriate given the facts of this case and is consistent with fees awarded in the Second Circuit in comparable securities class actions.

### 2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents

the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Lead Counsel devoted a total of 666 hours to the prosecution of this Action, resulting in a lodestar of $539,491.50. ¶74. Based on a one-third fee (equal to $666,667), Lead Counsel's lodestar of $539,491.50 yields a multiplier of 1.24. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable."); *Guevoura,* 2019 WL 6889901, at *18 ("multipliers of between three and four times…have been routinely awarded in this Circuit."); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3 was "not atypical for similar fee-award cases"); *In re EVCI*, 2007 WL 2230177, at *17 ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District.").[3]

---

[3] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (stating that courts routinely award lodestar multipliers of "between four and five"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *Asare v. Change*

In sum, a lodestar cross-check confirms that the requested fee award is appropriate and is within the range of what courts in this Circuit regularly award in class actions such as this one. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.    Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Fuks Declaration, Lead Counsel's work on this matter included, among other things:

- Reviewing and analyzing: (i) Mesoblast's SEC filings; (ii) public reports and news articles; (iii) research reports by securities and financial analysts; (iv) economic analyses of securities movement and pricing data; (v) transcripts of Mesoblast's investor calls; and (vi) other publicly available material and data, including FDA guidance documents and the FDA's and Mesoblast's briefing documents concerning Mesoblast's BLA for remestemcel-L to treat aGVHD and the transcript of the FDA advisory committee meeting on Mesoblast's BLA (¶22);

- consulting with an FDA expert concerning the technical aspects of the claims from an FDA regulatory perspective (¶22);

- researching and preparing a detailed 85-page Amended Complaint based on this

---

*Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar").

10

investigation (¶23);

- analyzing and opposing Defendants' pre-motion to dismiss letter and attending the pre-motion conference (¶¶25-26);

- engaging in negotiations regarding the terms of the proposed Settlement (¶¶27-30);

- drafting the Stipulation and related settlement documents (¶30);

- working with Plaintiffs' damages consultant to prepare the proposed Plan of Allocation (¶¶61-67);

- drafting the preliminary approval motion papers (¶31); and

- overseeing the implementation of the notice process (¶32).

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Proofs of Claim, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at \*10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at \*7 (S.D.N.Y. Apr. 2, 2013) (awarding one-third of settlement and finding that the "fee award will not only compensate [counsel] for time and effort already expended, but for time that [counsel] will be required to spend administering the settlement going forward, also supports their fee request."). The substantial time and effort devoted to this case by Lead Counsel to obtain the $2,000,000 Settlement confirms that the fee request is reasonable.

11

### 2.     The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *Flag Telecom*, 2010 WL 4537550, at *27.[4]  This case was no different.

From the outset of this Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and thus funds were available to compensate staff and to cover the considerable costs that a case such as this requires.  ¶81.  Lead Counsel received

---

[4] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

12

no compensation during the litigation, and they advanced and incurred $22,670.50 in expenses in prosecuting this Action for the benefit of the Settlement Class. *Id.* Had Lead Counsel not achieved the Settlement, this significant investment of time and money would have been lost.

Although Lead Counsel believes that Plaintiffs' claims are meritorious and remains confident in their ability to prove their claims and rebut Defendants' arguments, Lead Counsel also recognizes that there were a number of substantial risks in the litigation from the outset and that Plaintiffs' ability to succeed at the motion to dismiss stage and then at trial and obtain a substantial judgment was far from certain. As discussed below and in the Fuks Declaration, there were substantial risks here with respect to establishing both liability and damages in the Action. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. ¶¶27-47; *see also Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019)("Securities class actions in particular are 'notably difficult and notoriously uncertain.'''); *Comverse*, 2010 WL 2653354, at *5 ("class actions confront even more substantial risks than other forms of litigation.").

For example, although Lead Counsel believes that the Complaint adequately alleged the elements of falsity and scienter, there can be no doubt that Plaintiffs and the Settlement Class faced significant hurdles to defending those allegations both at the pleadings stage and then, if Plaintiffs survived Defendants' anticipated motion to dismiss, at summary judgment and trial. As set forth in more detail at ¶¶15-16 in the Fuks Declaration, the core of Plaintiffs' case is that Defendants made false and misleading statements and omitted material facts necessary to render statements concerning the clinical trial results for Mesoblast's BLA with the FDA for remestemcel-L not misleading. ¶15. As explained more fully at ¶37 of the Fuks Declaration, Defendants raised a number of arguments and defenses to Plaintiffs' claims in their pre-motion to dismiss letter, which

13

they would have asserted in a motion to dismiss. Even if Plaintiffs defeated a motion to dismiss, Defendants would have raised certain defenses at summary judgment (and then trial).  ¶40-43.

For example, Defendants argued that many of the challenged statements are forward-looking under 15 U.S.C. §§78-u5(c)(2)(3) and were accompanied by meaningful cautionary language warning investors of the risks involved with seeking FDA approval.  ¶37.  Defendants also argued that many of the statements are subjective, non-actionable opinions about Mesoblast's trial methodology and implications of results. Further, Defendants disputed, among other things, that any of the alleged misstatements were materially false or misleading and that any of the Defendants acted with scienter. *Id*.

Moreover, even if Plaintiffs were successful at the pleadings stage, they faced substantial burdens prevailing on a class certification motion and summary judgment motions.  Plaintiffs bear the burden of proof on class certification, and Defendants would have undoubtedly raised arguments challenging the propriety of class certification. Success was not a forgone conclusion; nor was a quick resolution of the issue. And assuming, *arguendo*, Plaintiffs certified the class, Defendants could have sought permission from the Second Circuit to appeal any class certification order under Federal Rule of Civil Procedure 23(f)'s interlocutory appeal provision. ¶¶38-39; *see Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019) (Plaintiffs' Counsel certified class followed by 15 month interlocutory appeal at Third Circuit).

Even assuming that Plaintiffs successfully defeated Defendants' anticipated motion to dismiss and surmounted all the other legal and factual obstacles to successfully establish liability, Plaintiffs would still face considerable risks in establishing loss causation and damages.  ¶¶44-45; *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to

14

recover"). Although Plaintiffs would have argued that the declines in Mesoblast's ADR price were attributable to Defendants' false and misleading statements/material omissions, Defendants would have likely argued that Plaintiffs could not rebut evidence that a significant percentage of the stock drops were attributable to other factors. ¶45.

Simply put, the Parties would have likely held extremely disparate views on loss causation and damages, and had Defendants' likely arguments been accepted in whole or part, they would have dramatically limited any potential recovery. Plaintiffs would have to incur considerable expense to pay for experts to attempt to counter these arguments, and even then, success would be far from assured, particularly as Defendants would hire their own experts to opine on their positions. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Even if Plaintiffs had overcome the substantial hurdles of class certification, summary judgment and trial, success at trial would not have guaranteed a recovery larger than the $2,000,000 Settlement. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20–*22 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd, Hubbard v.*

15

*BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (reversing verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

Despite the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss

16

causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). Such was the case here.

As noted above and in the Fuks Declaration, the litigation raised a number of complex questions concerning falsity, and Defendants' scienter, as well as liability and loss causation issues that would have required extensive efforts by Lead Counsel in consultation with experts to bring to resolution. ¶¶27-47. To build the case, Lead Counsel were, among other things, required to: (i) conduct an extensive factual investigation, which included consulting with FDA and damages experts, and a broad review of all publicly available information concerning Defendants, including FDA briefing document; (ii) preparing the 85-page Amended Complaint; (iii) opposing Defendants' pre-motion to dismiss letter and attending the Court's pre-motion to dismiss conference; (iv) preparing a detailed mediation statement, analyzing Defendants' mediation statement and attending the mediation; and (v) engaging in negotiations regarding the terms of the proposed Settlement. ¶11. If the Action had not been settled, there would have been copious amounts of additional motion practice, including—if Plaintiffs were successful at the pleadings stage—a class certification motion, summary judgment motions, and *Daubert* motions; discovery, including depositions of fact and expert witnesses, some of which would have taken place overseas; a trial; post-trial motion practice; and most likely appeals.

Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

17

**4.    The Quality of Lead Counsel's Representation Supports the Requested Fee**

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. ¶84. Lead Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *See Veeco*, 2007 WL 4115808, at *7; *Global Crossing*, 225 F.R.D. at 467.  The recovery here represents between 2.7% and 3.7% of likely recoverable damages. ¶48. This recovery exceeds the 2021 median ratio of settlements to investor losses, which was 1.8%. ¶85 (citing Ex. 2, NERA Report at 24, Fig. 22), Ex. 2.  Lead Counsel respectfully submits that the quality of their efforts in the litigation to date, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate the Settlement. ¶84; Ex. 5 (Rosen Law firm resume). Rosen Law has achieved significant settlements in this District including the $250 million settlement against the China-based company, Alibaba, which remains the largest securities class action settlement against a Chinese company (*Christine Asia Co. Ltd. et al. v. Jack Yun Ma, et al.*, 1:15-md-02631-CM-SDA (S.D.N.Y.)).  Other significant achievements in this District by the attorneys staffed on this case include *Koopman, et al., v. Fiat Chrysler Automobiles N.V., et al.,* Case No. 1:15-cv-07199-JMF (S.D.N.Y.) ($110 million settlement) and *Mendali v. Och-Ziff Capital Management Group LLC, et* al., 1:14-cv-03251-JPO (S.D.N.Y.) ($28.75 million settlement).

Courts have also recognized that the quality of the opposition faced by Lead Counsel should be taken into consideration in assessing the quality of the counsel's performance.  ¶86; *see, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences

18

the high quality of lead counsels' work."), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008). Here, Defendants were represented by Wilson, Sonsini, Goodrich & Rosati, P.C., an accomplished law firm with substantial securities class action litigation experience, that vigorously represented the interests of its clients throughout this Action. ¶86. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to prosecute the Action vigorously, ultimately resulted in the favorable Settlement. *Id.* Consequently, this factor militates in favor of the requested fee.

### 5.    The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring a review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Sec. III.C.1 above, the requested one-third fee is well within the range of, if not below, percentage fees that courts in the Second Circuit have awarded in comparable cases. ¶87. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

19

If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at \*29. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at \*18; *see also Hicks*, 2005 WL 2757792, at \*9 ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. ¶88; *see In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at \*6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### 7.    The Reaction of the Class to Date Supports the Requested Fee

The overwhelmingly positive reaction of the Settlement Class to date also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at \*29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). Through July 11, 2022, the Claims Administrator had mailed 29,398 Postcard Notices to potential Settlement Class Members and 21,732 potential Settlement Class Members received an email with a link to the Notice and Claim Form. ¶89, Ex. 1 ¶¶6-7. The Notice informed Settlement Class members that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement

20

Fund. ¶89. Although the time to object does not expire until July 25, 2022, to date, not a single objection has been received and there has been only one request for exclusion and one inquiry on how to file a request for exclusion. Ex. 1, ¶14-15. The lack of objections is "strong evidence" of the reasonableness of the fee request. *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).[5]

**E.    Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Lead Counsel also requests reimbursement of $22,670.50 in expenses incurred while prosecuting the Action. The expenses, outlined in the Fuks Declaration, are those that are routinely recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well-accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). A significant portion of the expenses in this case were incurred for professional services rendered by the mediator as well as Plaintiffs' FDA and damages consultants, and the remaining expenses are attributable to notice to class members fees and other incidental expenses incurred during the course of the litigation. ¶95. These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the

---

[5] Should any objections be received, Lead Counsel will address them in their reply papers.

paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the [s]ettlement fund."); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (awarding "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

Additionally, no objections to the expense request have been received, and the amount requested is below the $50,000 limit disclosed in the Postcard Notice and Notice. Ex. 1, at Ex. C (Notice); Ex. 1 at Ex. A (Postcard Notice). Accordingly, Lead Counsel respectfully request payment for these expenses.

> **F.      Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)**

In connection with their request for reimbursement of litigation expenses, Lead Counsel also seeks reimbursement of $1,000 each for Lead Plaintiff Frank Fayz and named plaintiff David Caudle, for a total of $2,000 in costs and expenses Plaintiffs' incurred. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

Here, Plaintiffs dedicated time to the successful prosecution of this Action by, among other things: providing counsel with information concerning their respective transactions in Mesoblast securities; reviewing Amended Complaint; participating in regular discussions with counsel concerning the prosecution of the Action; discussing the proposed Settlement with counsel in connection with evaluating and approving the proposed Settlement; and reviewing the settlement documentation. Ex. 6 at ¶6; Ex. 7 at ¶6. These are "precisely the types of activities that support

22

awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. 2009); *see also In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

Additionally, the Notice and Postcard Notice informed Settlement Class Members that requested Litigation Expenses would include Plaintiffs' reimbursement for their costs and expenses, and there have been no objections thereto. Accordingly, Lead Counsel respectfully requests that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Marsh & McLennan*, 2009 WL 5178546, at *21; *see In re Qudian Inc. Sec. Litig.*, No. 1:17-CV-09741-JMF, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *Vaccaro*, 2017 WL 6398636, at *8 (awarding $5,000 to each lead plaintiff of $2.85 million settlement); *Akazoo*, 2021 WL 4316717, at *2 (awarding $3,500 each to four lead plaintiffs of $4.9 million settlement); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

## IV.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the motion.

23

Dated: July 11, 2022

**THE ROSEN LAW FIRM, P.A.**

By:  */s/ Sara Fuks*
Sara Fuks
Laurence Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827
sfuks@rosenlegal.com
lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the proposed
Settlement Class*

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Sara Fuks*
Sara Fuks

25